UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHARISE NICHELLE ALLEN,

          Plaintiff,

     v.

NANCY A. BERRYHILL,

          Defendant.

Case No. 17-cv-03384-SI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 25, 28

      The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 25, 28. Having considered the parties' papers and the administrative record, the Court hereby GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment, and DENIES defendant's cross-motion for summary judgment. The matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.


**BACKGROUND**

**I.     Administrative Proceedings**

      In January 2013, plaintiff Sharise Nichelle Allen applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Administrative Record ("AR") at 20, 91-92. She alleged a disability onset date of December 7, 2012. *Id.* at 20. Her applications were denied originally and upon reconsideration. *Id.* at 102, 112, 125, 138. Plaintiff's applications were then heard by Administrative Law Judge ("ALJ") K. Kwon at a hearing on June 15, 2015. *Id.* at 20. The ALJ denied plaintiff's claims in a decision dated August 28, 2015. *Id.* at 17.

The Appeals Council denied review of plaintiff's claims on March 7, 2017, rendering ALJ Kwon's denial the final decision of the Commissioner. *See id.* at 7-9. In a letter dated May 24, 2017, the Appeals Council granted a request from plaintiff for an extension of time to file her civil action. *Id.* at 1-3. On June 12, 2017, plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt No. 1. Plaintiff sought and was granted five extensions of time to file her motion for summary judgment. Dkt. Nos. 14, 18, 20, 22, 24. The Court also granted a request to extend defendant's filing deadline. Dkt. No. 27. Briefing was completed when plaintiff filed a reply on June 12, 2018. Dkt. No. 29.

## II.     Medical History

By the time of the administrative hearing, plaintiff was a forty-five-year-old woman with at least a high school education. AR at 42-43. Her past work experience included in-home support services for her aunt and son, concluding sometime around January or February 2013. *Id.* at 43. She also previously worked as a towing dispatcher, a customer service representative, a receptionist, and a mortgage loan closer. *Id.* at 80-81, 290-91. She had not engaged in substantial gainful activity after December 7, 2012. *Id.* at 22.

Plaintiff applied for disability benefits on the basis of renal failure, difficulty standing, and lupus. *Id.* at 93. In November and December 2012 she was twice admitted for multi-day hospital stays due to acute kidney failure related to her lupus, among other conditions. *Id.* at 322, 363. Upon release from the hospital, she was put on a course of hemodialysis, three to four days per week until March 2013, and Cytoxan (chemotherapy) until June 2013. *Id.* at 70, 364, 458, 513. On June 17, 2013, plaintiff's treating rheumatologist Diana Lau, MD, saw plaintiff for a two-month lupus check-up and noted that

> [o]verall she is stable. She denies significant joint pains and swelling. She has had to cut the prednisone down to just 20 mg a day at this junction. She unfortunately gained a tremendous amount [o]f weight which is causing her some trouble but other than that her renal function stabilized with a creatinine of 1.47.

*Id.* at 513. On July 12, 2013, treating nephrologist Steven Tolkan, MD, saw plaintiff for a follow-up visit. Dr. Tolkan noted plaintiff's "Active Problems" as: anemia in chronic kidney disease;

2

hypertension- malignant; lupus erythematosus-systemic ("SLE"); and renal failure, chronic kidney disease, stage 4. *Id.* at 612. Dr. Tolkan recorded his "Impression" of plaintiff as: SLE, lupus nephropathy in remission, and hypertension. *Id.* at 614. In August 2013, Dr. Lau assessed plaintiff with SLE, nephritis due to SLE, myalgia and myositis, and fatigue. *Id.* at 556. Plaintiff later switched medical providers to Kaiser Permanente, where on October 9, 2015, primary care physician Annette Enriquez, MD, wrote a work status report stating that plaintiff "is placed off work from 2/20/2013 through 2/19/2016." *See id.* at 1884, 2019. The administrative record contains no treatment notes from Dr. Enriquez.

In July 2014, Dr. Lau described plaintiff as morbidly obese, stating that plaintiff "had gained weight due to various circumstances including chronic use of high-dose of steroids." *Id.* at 1770. The medical records show that plaintiff, who is five feet six inches tall, weighed 239 pounds on February 28, 2013. *Id.* at 517. As of August 28, 2013, she weighed 290 pounds, and by the time of the hearing in June 2015 her weight had been hovering around 300 to 315 pounds.[1] *Id.* at 65-66, 555. In October 2014, plaintiff received an MRI due to left knee pain that revealed a meniscus tear and a Baker's cyst. *Id.* at 1768, 1998-99. At the hearing, plaintiff also testified to experiencing dizzy spells at least weekly and "flares" of her lupus two to three days a week. *Id.* at 45, 49-50.

## LEGAL STANDARD

### I.    Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review. 20 C.F.R. § 416.1481. The Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

---

[1] The administrative determinations at the initial and reconsideration levels list plaintiff's weight as 130 pounds. AR at 93, 103, 113, 126. This appears to be an error. Plaintiff clarified at the hearing before the ALJ that she never weighed 130 pounds; rather, her weight before the weight gain was approximately 230 pounds. *Id.* at 57.

3

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* (citing *Treichler*, 775 F.3d at 1101).

## II. Disability Benefits

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(1). To determine

the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

## ALJ'S DECISION

Plaintiff was represented by counsel at the hearing before the ALJ.[2] AR at 20. The ALJ heard testimony from plaintiff as well as from vocational expert Malcolm Brodzinsky. No medical expert testified.

On August 28, 2015, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act. In determining plaintiff's disability status, the ALJ

---

[2] Plaintiff has different counsel representing her in this appeal.

applied the five-step disability analysis in accordance with 20 C.F.R. §§ 404.1520(a) and 416.920(a). *Id.* at 21. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after December 7, 2012, the alleged onset date of plaintiff's disability. *Id.* at 22. At step two, the ALJ found that plaintiff suffered severe impairment from systemic lupus erythematosus, chronic renal insufficiency, obesity, osteoarthritis of the left knee with a lateral meniscal tear, and a depressive disorder. *Id.* at 23. At step three, the ALJ found that plaintiff's impairments did not meet or equal the severity of any impairment in the Listing of Impairments, including Listing 14.02, Systemic Lupus Erythematosus. *Id.*

Before proceeding to step four, the ALJ examined plaintiff's RFC. *Id.* at 25. In assessing plaintiff's RFC, the ALJ evaluated plaintiff's testimony and the medical evidence and weighed the opinions of plaintiff's treating physicians and the agency non-examining physicians. Specifically, the ALJ gave little weight to the opinion of plaintiff's treating physician Dr. Lau. *Id.* at 29-30. The ALJ also gave little weight to the opinions of the state agency physicians regarding plaintiff's "abilities to lift, carry, stand, walk, perform postural activities, and work around hazards . . . ." *Id.* at 29. The ALJ gave great weight to the remainder of the state agency physicians' opinions. *Id.* As to plaintiff's own testimony, the ALJ determined that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that plaintiff's testimony regarding the symptoms' severity was not entirely credible. *Id.* at 26.

In light of the above assessment, the ALJ found plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[3] with the following limitations:

---

[3] Social Security regulations provide that the term "sedentary work" has the following definition, mirroring that used in the Dictionary of Occupational Titles:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

"never climb ladders, ropes, or scaffolds; . . . occasionally perform all remaining postural activities; . . . not work at heights or with heavy or hazardous machinery as safety precautions; . . . work indoors with no exposure to extreme temperatures; and . . . [be] limited to simple and routine work with a maximum specific vocational preparation (SVP) of 2." *Id.* at 25.

Continuing to step four, the ALJ relied on testimony from the vocational expert ("VE") to find that plaintiff was unable to perform past relevant work. *Id.* at 30. At step five, the ALJ also relied on testimony from the VE to find that jobs existed in significant numbers in the national economy that plaintiff could perform, and therefore a finding of "not disabled" was appropriate. *Id.* at 30-31.

## DISCUSSION

Plaintiff argues that the ALJ erred in evaluating medical opinion testimony, particularly in weighing the opinion of treating physician Dr. Lau and in interpreting a statement from treating physician Dr. Tolkan. Second, she contends the ALJ erred in discrediting plaintiff's testimony by failing to provide specific, clear and convincing reasons based on substantial evidence in the record. Third, plaintiff states the ALJ erred at step three by failing to analyze medical equivalence under Listing 14.02. Plaintiff further argues that substantial evidence does not support the ALJ's findings in assigning the RFC or at step five, by allegedly failing to take account of plaintiff's fatigue, obesity, and ambulation problems. Plaintiff requests the Court order an immediate award of benefits. Defendant contends that substantial evidence supports all of the ALJ's findings and conclusions. Defendant further contends that if the Court finds error, it should remand to the agency for further review rather than immediately award benefits.

## I.    Medical Opinions

Plaintiff argues that the ALJ erred in two main respects with regard to the medical opinions of treating physicians. First, she argues the ALJ erred in giving "little weight" to the opinion of treating rheumatologist Dr. Lau. Plaintiff states that Dr. Lau's conclusions "regarding the long-term debilitating nature of Ms. Allen's Lupus and related impairments, continuing long past July

2013[,]" were supported by substantial evidence in the records, and thus the ALJ erred in failing to provide specific and legitimate reasons for discounting the opinion. Pl.'s Mot. at 10-13. Second, plaintiff argues that the ALJ erroneously "cherry-picked" evidence out of context; specifically, that the ALJ erred in relying on "Exhibit 16F/3" as support for the conclusion that by July 12, 2013, plaintiff's "kidney-related lupus symptoms had largely resolved." *Id.* at 14.

In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat her; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician. *Id.* Similarly, an examining physician's opinion usually should be given more weight than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). As such, the ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. Even where an examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison*, 759 F.3d at 1012; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). Social Security regulations provide that, when a treating source's opinions are not given controlling weight, an ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) (length of treatment relationship and the frequency of

examination; nature and extent of the treatment relationship) and (c)(3-6) ("supportability," consistency, specialization, and other factors that tend to support or contradict the opinion) in determining how much weight to give each opinion. *Id.* at 1012, n.11.

The "substantial evidence" standard requires an ALJ to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725. Conclusory statements by the ALJ are insufficient; she "must set forth her own interpretations and explain why they, rather than the doctors', are correct." *Id.* An ALJ errs if she "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### A.     Dr. Lau

Neither the ALJ nor defendant point to any medical opinion that contradicts Dr. Lau's. Accordingly, because Dr. Lau's opinion is uncontradicted, the ALJ could only reject the opinion by citing clear and convincing reasons supported by substantial evidence.[4] *See Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198). For the reasons that follow, the Court finds that the ALJ committed error by not sufficiently supporting the weight given to the medical opinion of Dr. Lau.

In determining the RFC, the ALJ found, in relevant part:

> On October 24, 2013, treating rheumatologist Dr. Lau opined that the claimant would have difficulty maintaining work (Exh. 15F/2), and on November 1, 2013, Dr. Lau indicated that the claimant "stated that her functional capacity has been quite limited" (Exh. 17F/2). The undersigned gives little weight to these medical opinions. First, although Dr. Lau cited the frequency of the claimant's medical treatments as her reason for being unable to sustain work activity (Exh. 15F/2), at the June 15, 2015 administrative hearing, the claimant acknowledged that she attended medical visits only every three months (Hearing Testimony). Second, by commenting that the claimant "stated that her functional capacity has been quite limited" (Exh. 17F/2) through her [sic] November 1, 2013, Dr. Lau suggested that she based on [sic] her opinions on the claimant's reported functional limitations, which the undersigned does not find fully credible

---

[4] Plaintiff argues in her brief that the ALJ needed to provide specific and legitimate reasons supported by substantial evidence. Pl.'s Mot. at 10. That lower threshold applies when a treating physician's opinion is contradicted. Either standard, however, would lead to the same outcome here.

10

for the reasons outlined above in detail. Third, Dr. Lau's recent physical examination findings of widespread joint tenderness, crepitus and warmth at the knees, and mild crackles at the lung bases, but otherwise clear breathing sounds, no edema, no more than mild range of motion restrictions, no significant skin rashes, no more than slight puffiness at the joints, and no synovitis (Exh. 24F/3, 5, 7) do not substantiate her conclusion that the claimant would have entirely work-preclusive functional restrictions. Moreover, Dr. Lau's medical opinion is inconsistent with the remainder of the medical evidence, demonstrating that the claimant realized notable improvement from rheumatoid and nephrology treatments (Exh. 3F/3, 5, 7; Exh. 4F/3, 9; Exh. 8F/1, 6; Exh. 11F/1; Exh. 15F/1; Exh. 16F/1; Exh. 24F/5; Exh. 33 F/2; Exh. 35F/22-23). In light of these facts, Dr. Lau's medical opinions warrant little weight.

AR at 29.

As a threshold matter, the ALJ's rejection of Dr. Lau's opinion "was legally erroneous" because the ALJ "fail[ed] to apply the appropriate factors in determining the extent to which the opinion should be credited." *See Trevizo*, 871 F.3d at 676. Where the ALJ does not give controlling weight to a treating physician's opinion, the ALJ must consider the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6), "such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the unsupportability of the opinion[.]" *Id.* The failure to do so "alone constitutes reversible legal error." *Id.*

Moreover, the Court agrees with plaintiff that substantial evidence does not support the ALJ's finding as to the November 2013 opinion. The statement that the ALJ rejected, from a Treating Source Statement, was this: "Patient stated that her functional capacity has been quite limited due to her current illness." *See* AR at 29, 623. As the Ninth Circuit has found:

> [A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) ("In sum, the ALJ appears to have relied on her doubts about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable.").

*Ryan*, 528 F.3d at 1199-1200. The Treating Source Statement contained a recitation of plaintiff's condition based on objective medical criteria, such as the fact that plaintiff "had significant renal failure" and that she "had a total of a six month course of IV Cytoxan monthly and high dose of steroid." *See* AR at 623. The fact that Dr. Lau included plaintiff's self-reported functional

capacity does not provide a clear and convincing reason to reject Dr. Lau's opinions wholesale. Moreover, as will be explained below, the Court finds that the ALJ erred in discounting plaintiff's symptom testimony, so any rejection of Dr. Lau's opinion rooted in a rejection of plaintiff's symptom testimony must be reevaluated.

As to Dr. Lau's October 2013 opinion, however, the ALJ's error was harmless. The ALJ also critiqued this portion of a treatment note from Dr. Lau: "With her current situation, [plaintiff] requires frequent doctors visit [sic]. It will be difficult for her to maintain her job." *Id.* at 586. By relying on the frequency of doctor's appointments as the reason why plaintiff would have difficulty keeping her job, Dr. Lau was not voicing a "medical opinion" within the meaning of the regulations. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.) A determination about whether the frequency of appointments would allow a claimant to maintain work is the province of the vocational expert. *See Myers v. Barnhart*, No. ED CV 04-994 PJW, 2006 WL 1663848, at *6 (C.D. Cal. June 6, 2006). As such, the ALJ was correct that this statement by Dr. Lau was not entitled to deference.

### B. Dr. Tolkan

Plaintiff also argues the ALJ wrongly "cherry-picked" information out of the record and "played doctor" by interpreting the term "remission" to mean "resolved." Pl.'s Mot. at 14. At step three of the decision, the ALJ found that plaintiff's impairments did not satisfy Listing 14.02 (systemic lupus erythematosus, or SLE) in part because plaintiff had not satisfied the durational requirement for a period of twelve months or more. AR at 23. The ALJ stated, "While the claimant alleges disability beginning December 7, 2012, by July 12, 2013, the claimant's treating nephrologist concluded that the claimant's kidney-related lupus symptoms had largely resolved (Exh. 16F/3)." *Id.* Exhibit 16F contains notes from a follow-up visit with treating nephrologist Dr. Tolkan. These notes conclude with the following "Impression":

> sle
> lupus nephropathy in remission
> hypertension

*Id.* at 614. The ALJ also relied on these notes in determining plaintiff's RFC, as support for the finding that plaintiff had not shown "disabling symptoms or work-preclusive limitations for any period of twelve months or greater." *See id.* at 26.

Plaintiff argues that the ALJ's finding that her symptoms were "largely resolved" as of July 2013 was erroneous. Defendant does not address this argument in her opposition brief but only restates the ALJ's conclusion that "Dr. Tolkan found [plaintiff's SLE] was in remission[.]" *See* Def.'s Cross-Mot. at 11.

The Court agrees with plaintiff that substantial evidence does not support the ALJ's conclusion that as of July 2013 plaintiff's kidney-related SLE "had largely resolved." *See* AR at 23. "Remission" is defined as "[a]batement or lessening in severity of the symptoms of a disease," and "remit" is defined as "[t]o become less severe for a time without absolutely ceasing." *Stedman's Medical Dictionary* 1670 (28th ed. 2006). Indeed, Dr. Tolkan's impression from the next follow-up visit, on September 13, 2013, describes plaintiff no longer as "in remission" but as "nephrotic." AR at 617. In July, September, and October 2013 visits, Dr. Tolkan listed plaintiff's "Active Problems" to include "Renal Failure, chronic Kidney Disease, stage 4." *Id.* at 612, 615, 618. "Occasional symptom-free periods . . . are not inconsistent with disability," and the Court agrees with plaintiff that the ALJ erred in interpreting Dr. Tolkan's July 2013 treatment note to mean that plaintiff's kidney issues had "largely resolved." *See Trevizo*, 871 F.3d at 679 (quoting *Lester*, 81 F.3d at 833).

## C. Remedy

Plaintiff seeks an immediate award of benefits under the credit-as-true rule. Pl.'s Mot. at 23-24. The Ninth Circuit has explained that this remedy "was intended as a rare and prophylactic exception to the ordinary remand rule when there is no question that a finding of disability would be required" if the medical opinion or claimant's testimony were credited as true. *See Leon*, 880 F.3d at 1045 (citing *Treichler*, 775 F.3d at 1101). Here, the Court will not exercise its discretion

to direct immediate payment of benefits. The record does not contain any Treating Source Statement that clearly explains the functional limitations of plaintiff's many conditions. The only Treating Source Statement provided, from Dr. Lau, describes plaintiff's medical history and treatment regimen but does not describe what her limitations are. *See* AR at 623. Plaintiff's counsel at the administrative level seemed to concede that this document was lacking in detail. Prior to the hearing, counsel wrote: "This is the best I could obtain from Dr. Lau[,] who does not normally complete medical source statements routinely used in Social Security Disability practice." *Id.* at 309. Because "further administrative proceedings would be useful," the Court will not order an immediate award of benefits but will remand this case for further proceedings consistent with this Order. *See Leon*, 880 F.3d at 1045 (citations omitted).

On remand, the ALJ shall reweigh the medical opinion of Dr. Lau. It is unclear based on the wording of the decision whether the ALJ rejected opinions by Dr. Lau outside of the two statements from October and November 2013 that the ALJ specifically identified. To the extent that the ALJ was rejecting more than just these two statements, on remand the ALJ must specifically identify what opinion is being rejected. *See Garrison*, 759 F.3d at 1012 ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it . . . ."). The ALJ must reweigh Dr. Lau's opinion after reconsidering plaintiff's credibility regarding her symptoms. The ALJ shall also re-evaluate step three based on this Court's finding Dr. Tolkan's July 2013 notes are not substantial evidence supporting the conclusion that plaintiff's "kidney-related lupus symptoms had largely resolved." *See* AR at 23.

If upon remand the ALJ determines that the evidence is ambiguous or that the record is inadequate to allow for proper evaluation, the ALJ shall discharge the duty to develop the record fully by, for instance: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).

## II.     Plaintiff's Symptom Testimony

Plaintiff also contends that the ALJ improperly discounted her testimony regarding her symptoms "of disabling Lupus-related impairments." Pl.'s Mot. at 15. These include her complaints of fatigue requiring several naps per day, her need to use the restroom at least hourly, and weight gain. *Id.* at 16.

The Ninth Circuit has established a two-step analysis for determining how to credit a claimant's symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).[5] If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (internal quotation marks and citation omitted).

At the first step of the credibility test, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR at

---

[5] Defendant disputes that the clear and convincing reasons standard applies to review of a claimant's subjective symptom testimony. Def.'s Cross-Mot. at 16 n.7. While acknowledging that this standard is the law of the Ninth Circuit, defendant "states her objection to preserve the issue for any future appeal." *Id.* The Ninth Circuit has repeatedly rejected defendant's position in recent years, reaffirming the continued validity of the clear and convincing reasons standard. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014)).

26. The ALJ cited no evidence of malingering. Moving to the second step, the ALJ found plaintiff's "allegations as a whole to be partially credible" because the ALJ found "that the record does not support the claimant's allegations of work-preclusive limitations arising from her physical impairments and related symptoms." *Id.* The ALJ found that "the medical evidence does not substantiate the claimant's allegations of disabling symptoms and work-preclusive limitations arising from her physical impairments for a period of twelve months or greater." *Id.* at 27. The ALJ also found that the medical record did not support plaintiff's allegations of disability stemming from psychological impairments. *Id.* In addition to medical evidence, the ALJ found plaintiff only partially credible because plaintiff "realized benefit from several interventions[,]" because "of the limited nature of the claimant's treatment for her mental symptoms," and because the ALJ found her "activities of daily living are inconsistent with her allegations of entirely work-preclusive functional limitations," citing that the record shows plaintiff "continues to drive . . ., she shops for groceries . . ., she prepares simple meals . . ., she attends her children's sporting events . . ., and the claimant worked part-time as a caregiver for her son and her aunt for part of the alleged period of disability . . . ." *Id.* at 27-28. Finally, the ALJ cited the fact that plaintiff was collecting unemployment benefits, which indicates that she was ready, willing, and able to work. *Id.* at 28. The ALJ did, however, credit plaintiff's "allegations of difficulties with heavy or repetitive lifting . . . secondary to the claimant's frequent reports of fatigue as well as findings of generalized joint tenderness[;]" "difficulties engaging in postural activities . . . based on findings of tenderness over the knees and in view of the claimant's obesity[;]" and "allegations of problems with concentration. . ., as the claimant routinely endorsed depressive symptoms and forgetfulness." *Id.*

The Court agrees with plaintiff that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's symptom testimony. First, as the Ninth Circuit has held, "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter*, 806 F.3d at 489; *see also Reddick*, 157 F.3d at 722 ("General findings are insufficient."). That is what the ALJ did here. The ALJ repeatedly discredited plaintiff's claims

of disability based on a lengthy recitation of the medical record, without ever specifying what testimony the ALJ found not credible.  *See Brown-Hunter*, 806 F.3d at 489 ("[W]e require the ALJ to specify which testimony she finds not credible . . . ."); AR at 26-28.  Such an error "[i]s not harmless because it precludes [the court] from conducting a meaningful review of the ALJ's reasoning." *Brown-Hunter*, 806 F.3d at 489.

In addition to the recitation of the medical record, the ALJ cited "other factors" and a perceived inconsistency between plaintiff's activities of daily living and her allegations of disability.  Yet the ALJ's stated reasons for discarding much of this evidence are not clear and convincing.  For instance, the ALJ discounted plaintiff's allegations of disabling psychological symptoms due in part to her alleged "poor compliance with psychotropic medications," citing February 2015 progress notes by Marriage and Family Therapist Stephanie Snyder.  *See* AR at 28. Yet those notes state that plaintiff "never really took [the medication] because of all the other medications she is taking for her health conditions." *Id.* at 1798.  The ALJ erred by relying on medication noncompliance without examining plaintiff's believability in this regard.  *See Trevizo*, 871 F.3d at 679-80 (finding ALJ erred by weighing the claimant's failure to take painkillers against her credibility regarding elbow pain without addressing whether her stated reason for not taking the drugs—her fear of becoming addicted—was believable).

The ALJ also relied on third party function reports and hearing testimony as support for the conclusion that plaintiff's "activities of daily living are inconsistent with her allegations of entirely work-preclusive functional limitations," pointing to plaintiff's alleged ability to drive, shop for groceries, and prepare simple meals.  AR at 27-28.  However, the third party function reports all qualified the statements about plaintiff's daily activities.  For example, although plaintiff's spouse and mother confirmed that plaintiff buys groceries, her spouse stated that she shops for groceries, but only "once a week, hour[,]" while her mother stated that plaintiff grocery shops once a week for two hours, explaining: "Has to get food for the family but the children help[.]" *Id.* at 272, 279. Her spouse stated that she cooks "soups, sandwiches[,] easy to prepare foods" that take "just a couple of minutes." *Id.* at 272.  And plaintiff testified that she drives "[m]aybe once a week, if that," and her spouse, mother, and aunt likewise all qualified their statements that plaintiff drives

17

with caveats such as "as little as possible" and "it is not a good idea." *See id.* at 61, 272, 279, 286. In this context, preparing simple meals, driving, and grocery shopping are "not consistent with regularly attending a full-time job." *See Popa v. Berryhill,* 872 F.3d 901, 906-07 (9th Cir. 2017) (analyzing the claimant's activities of grocery shopping, TV watching, and weekly church attendance in the past). Nor is attendance at her children's sporting events a clear and convincing reason, where plaintiff testified that in the prior year she attended "maybe three or four of [her] daughter's basketball games," ten minutes away from plaintiff's home, and that it was "just a little uncomfortable sitting on the bleachers. It's a little hard without the back support, just really uncomfortable." AR at 73. As the Ninth Circuit has explained:

> The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, *see, e.g., Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir.1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic restricted travel); *Gallant,* 753 F.2d at 1453 (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes), and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ's finding that plaintiff's activities of daily living are inconsistent with work-preclusive functional limitations is not supported by substantial evidence in the record.

Importantly, the ALJ did not address plaintiff's testimony regarding her frequent need to use the restroom. Plaintiff testified at the hearing that she uses the restroom five to six times in the evening and, during the day, up to two to three times per hour due to prescribed diuretics. AR at 71-72. This is particularly significant because the VE testified that there would be no jobs in the national economy for someone who needed to take six to eight unscheduled, ten-minute breaks throughout the workday, or for someone who would be off task fifteen to twenty percent of the workday. *Id.* at 86-87. The ALJ generally found plaintiff's "allegations regarding her medication side effects to be credible because the claimant's reported side effects could reasonabl[y] result from her medications[,]" yet the ALJ omitted mention of the side effect that caused frequent restroom breaks. *See id.* at 28.

Plaintiff also argues in her motion that the ALJ should have taken account of her testimony

18

that her fatigue, on the days when she has lupus flares (two to three times weekly), requires her to take "a couple naps a day." Pl.'s Mot. at 16 (citing AR at 67). The ALJ mentioned plaintiff's fatigue only in passing, finding plaintiff's "allegations of difficulties with heavy or repetitive lifting to be credible secondary to the claimant's frequent reports of fatigue . . . ." *See* AR at 28. Thus, the ALJ credited plaintiff's fatigue symptoms to the extent it impacted her ability to lift objects but made no mention of her testimony regarding the need to take naps. Any rejection of plaintiff's testimony regarding the naps was therefore not supported by clear and convincing reasons. *See Leon*, 880 F.3d at 1046.

Finally, the Court disagrees with defendant that the ALJ properly cited plaintiff's receipt of unemployment benefits as a reason for doubting her credibility. *See* Def.'s Cross-Mot. at 19. At the hearing, the ALJ questioned plaintiff about unemployment insurance benefits in her earnings history, but did not question her further about whether she in fact held herself out as available to work. *See* AR at 75-77. The ALJ wanted "to clear up" whether the earnings were in fact from unemployment: "I wanted to make sure it wasn't from work. Okay, let's move on. . . ." *Id.* at 77. Although "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, . . . the record here does not establish whether [plaintiff] held [her]self out as available for full-time or part-time work." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Because "[o]nly the former is inconsistent with [her] disability allegations[,] . . . such basis for the ALJ's credibility finding is not supported by substantial evidence." *Id.*; *see also Berkebile v. Berryhill*, 714 Fed. App'x 649, 652 (9th Cir. 2017) (affirming adverse credibility finding based in part on unemployment benefits "*together with* testimony that claimant held herself out as available for work") (emphasis added).

In sum, the ALJ did not support the credibility finding with specific, clear and convincing reasons. On remand, the ALJ must re-weigh plaintiff's symptom testimony. The ALJ must also revisit Dr. Lau's opinion and the RFC finding in light of any changes to the finding regarding plaintiff's credibility.[6]

_____

[6] Plaintiff also argues that the ALJ erred by failing to fully and fairly develop the record regarding the extent of plaintiff's chemotherapy and dialysis treatments. Pl.'s Mot. at 17-18. At

19

### III. "Medical Equivalence" Analysis under Step Three (Listing 14.02)

Plaintiff argues that the ALJ erred by failing to analyze medical equivalence at step three. Specifically, plaintiff states the ALJ found that her severe lupus did not *meet* Listing 14.02 but that the ALJ did not properly determine whether plaintiff's lupus *equaled* Listing 14.02. Pl.'s Mot. at 19.

The Social Security regulations state, at step three, "If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d). Appendix 1 contains Listing 14.02, for SLE, which requires:

**A.** Involvement of two or more organs/body systems, with:

1. One of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

OR

**B.** Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P., app'x 1.

---

the hearing, when plaintiff's attorney questioned her regarding her dialysis and chemotherapy after her release from the hospital, the ALJ commented, "This is a good detail because a lot of the records are not giving us the exact picture." AR at 69. The ALJ then proceeded to question plaintiff about the length of her treatment. *Id.* at 69-71. This did not, as plaintiff argues, trigger the ALJ's duty to subpoena plaintiff's physicians, continue the hearing, or keep the record open after the hearing. *See* Pl.'s Mot. at 18. In the decision, the ALJ cited to medical records documenting the length of dialysis and chemotherapy treatments. *See* AR at 26. Given this, the ALJ's comment that "a lot of the records are not giving us the exact picture" does not provide separate grounds for a finding of error.

The ALJ found that plaintiff did not meet or equal Listing 14.02 because

> [a]lthough the record contains evidence of systemic lupus erythematosus with involvement of two or more organs or body systems with one of the organs or body systems involved to at least a moderate level of severity (i.e., the kidneys), the record does not support a finding that the claimant's impairments satisfied the criteria of listing 14.02 for a period of twelve months or more. While the claimant alleges disability beginning December 7, 2012, by July 12, 2013, the claimant's treating nephrologist concluded that the claimant's kidney-related lupus symptoms had largely resolved (Exh. 16F/3). Furthermore, the record does not contain evidence of marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace based on the reasons explained below.

AR at 23. Thus, the ALJ concluded that plaintiff did not meet Listing 14.02A due to the 12-month durational requirement and additionally did not meet Listing 14.02B due to a lack of marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace.

When making an argument for medical equivalence under step three, a claimant "must 'present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 1176 (citing *Zebley*, 493 U.S. at 531). "Moreover, '[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" *Id.* at 1178 (quoting *Burch,* 400 F.3d at 683).

In her motion, plaintiff makes the argument that the *Zebley* Court previously rejected. She fails to identify which of the criteria in Listing 14.02 she alleges she equals, and she fails to identify the medical findings in support of that argument. Instead, she generally argues that the overall functional impact of her lupus and accompanying "renal failure, obesity and depression taken together[] 'equaled' the requirements of Listing 14.02 in both severity and duration." Pl.'s Mot. at 20.[7] At the administrative level, plaintiff did not make an argument for medical

---

[7] Later in her motion, plaintiff specifically focuses on obesity, saying the ALJ did not

equivalence, and it is unclear how she argues equivalence here. *See* AR at 309-10 (arguing that plaintiff met Listing 14.02, not that she equaled the Listing). Plaintiff's case is thus distinguishable from *Marcia v. Sullivan*, on which plaintiff relies, where the claimant had "presented evidence that the combination of his impairments established medical equivalence." *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990); *see also Burch*, 400 F.3d at 683 ("this Court [has] determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment") (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)). Without more information, it appears that plaintiff's quarrel is actually with the ALJ's finding that plaintiff did not *meet* Listing 14.02, rather than that she did not equal the Listing.

Nevertheless, the Court finds that a reevaluation of step three is warranted, in light of the Court's findings above that the ALJ improperly weighed the opinion of treating physician Dr. Lau, improperly concluded that Dr. Tolkan found plaintiff's kidney-related lupus symptoms had largely resolved as of July 2013, and improperly discounted plaintiff's symptom testimony regarding her daily activities. The ALJ denied plaintiff's claim at step three due to the ALJ's finding that by July 2013 plaintiff's "kidney-related lupus symptoms had largely resolved" and that the record did not show marked limitations in activities of daily living. AR at 23. Having found above that substantial evidence does not support the ALJ's findings in these areas, the Court orders on remand that the ALJ reevaluate whether plaintiff has an impairment or combination of impairments (including obesity)[8] that meets Listing 14.02.

"adequately consider whether Ms. Allen's 'severe' obesity was a factor that contributed to Lupus symptoms and related impairments thus equaling Listing 14.02 at step three and/or eroding the occupational base at step 5 of the sequential evaluation due to severe fatigue and ambulation issues." Pl.'s Mot. at 21.

[8] Social Security Ruling ("SSR") 02-1p states that "[o]besity may be a factor in both 'meets' and 'equals' determinations" at step three. "We will . . . find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. . . . We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment."

### IV.  Residual Functional Capacity Finding and Step Five

Finally, plaintiff argues that the ALJ erred with respect to the RFC finding, by not accounting for plaintiff's obesity and other limitations.  Pl.'s Mot. at 22-23.  Plaintiff points to the ALJ's finding that plaintiff's "severe obesity, *including fatigue*, were sufficiently accounted for with 'postural limitations,' limitations on exposure to heat, and a sedentary RFC . . . ."  *Id.* at 22.  Plaintiff argues that the ALJ failed to account for substantial evidence in the record of "chronic, disabling fatigue; the severe, multiple side effects of medications including obesity; and severe difficulty with ambulation."  *Id.* at 23.  Taking into account these limitations, plaintiff argues that the vocational expert testimony showed that "there was no work for a hypothetical person" with plaintiff's limitations because the VE testified that there would be no work for someone who would miss two to three days of work per month, require six to eight bathroom breaks daily in addition to scheduled breaks, or be off task fifteen to twenty percent of the workday.  *Id.*

Plaintiff makes only brief argument in this regard, highlighting her fatigue, obesity, "severe difficulty with ambulation," and need to use the restroom at least hourly.  *See* Pl.'s Mot. at 23.  A review of the ALJ's decision shows that the ALJ did take account of obesity and ambulation problems, finding, for instance, that plaintiff should avoid extreme heat and humidity due to her obesity and disagreeing with the state agency physicians' findings that plaintiff could stand and walk for six out of eight hours, determining instead that plaintiff's "allegations of problems with prolonged standing and walking [were] credible" and so limited plaintiff's RFC to standing and walking for two hours during an eight-hour day.  *See* AR at 28-29.  However, the ALJ's RFC finding rested largely on the evaluation of plaintiff's symptom testimony and the rejected opinion of Dr. Lau.  In light of the Court's direction that the ALJ shall reevaluate Dr. Lau's opinion and plaintiff's testimony, the Court finds that a reevaluation of the RFC is likewise warranted.  Should the ALJ make a different RFC finding on remand, the ALJ shall revisit step five accordingly.

*///*

# CONCLUSION

The Court GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment, and DENIES defendant's cross-motion for summary judgment. The Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. On remand, the ALJ shall:

- **Reweigh the credibility of plaintiff's symptom testimony**; in particular, the ALJ shall address plaintiff's testimony regarding her need to take multiple naps per day several days a week and use the restroom at least hourly. If the ALJ rejects any portions of plaintiff's symptom testimony, the ALJ shall identify what testimony the ALJ finds not credible and provide specific, clear and convincing reasons supported by substantial evidence in the record.

- After reconsidering plaintiff's symptom testimony, **reweigh Dr. Lau's opinion**. If the ALJ again finds that Dr. Lau's opinion is not controlling, the ALJ shall weigh the opinion by applying the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). Any opinions of Dr. Lau that the ALJ rejects must be specifically identified and rejected with clear and convincing reasons supported by substantial evidence in the record.

- In light of the reevaluation of plaintiff's symptom testimony and Dr. Lau's opinion, and of the Court's finding that substantial evidence does not support the conclusion that as of July 2013 plaintiff's kidney-related lupus had "largely resolved," **revisit step three** to determine whether plaintiff has an impairment or combination of impairments (including obesity) that meets Listing 14.02.

///

- If the ALJ again makes an adverse finding at step three, **revisit the RFC finding and step five**, in light of the above guidance.

- If needed, the ALJ shall subpoena plaintiff's physicians, submit questions to plaintiff's physicians, continue the hearing, keep the record open after the hearing to allow supplementation of the record, or take other action as appropriate to **discharge the ALJ's duty to develop the record fully.**

    **IT IS SO ORDERED**.

Dated:  September 11, 2018

SUSAN ILLSTON
United States District Judge